FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA 2013 MAR 21 PM 2: 07

DUBLIN DIVISION

CLERK C. Adams
SO. DIST. OF GA.

| | |
|---|---|
| CARLTON WRIGHT, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CV 312-011 |
| ) | |
| WALT WELLS, Warden, ) | |
| ) | |
| Respondent. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, a federal inmate currently incarcerated at McRae Correctional Facility ("MCF") in McRae, Georgia, brought the above-captioned petition under 28 U.S.C. § 2241. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Wells.

### I. BACKGROUND

On March 16, 2005, the United States District Court for the District of Arizona sentenced Petitioner, a citizen of Jamaica, to a 151-month term of imprisonment for "Possession with Intent to Distribute Cocaine" and "Conspiracy to Possess with Intent to Distribute Cocaine." United States v. Wright, CR 403-02311, doc. no. 155 (D. Ariz. Mar. 16, 2005). Prior to being transferred to MCF, Petitioner was incarcerated at the Federal Medical Center ("FMC") in Lexington, Kentucky. (Doc. no. 10, p. 7; doc. no. 10-3.) While incarcerated at FMC, Petitioner enrolled in the Bureau of Prison's ("BOP") Literacy Program

and completed approximately 835 hours therein. (Doc. no. 10, p. 7; doc. no. 10-4.)

On April 30, 2008, shortly after he was transferred to MCF (see doc. no. 1, p. 3; doc. no. 10-1), Petitioner signed an "Education Department" form for that institution and checked the box indicating, "I have been counseled and education staff are trying to verify my high school diploma or GED credential." (Doc. no. 10-5.) Although Petitioner wrote the words "under duress" underneath his signature on the form (id.), the meaning of that phrase is unclear from the form itself, and Petitioner does not explain its meaning in his petition here or make any actual mention of that form. Subsequently, on October 7, 2009, Petitioner signed an "Education Program Statement of Refusal Form" in which he indicated his willing refusal to participate in education services and his awareness that refusing to participate in educational services "may impact [his] disciplinary or classification record." (Doc. no. 10-6.) Next to his signature on that form, which is also signed by Education Program Representative Mary Draggers, Petitioner again wrote "under duress" without any additional explanation. (Id.; see also doc. no. 10-7.)

According to Petitioner, he signed the October 7th form at the culmination of an "interview" with Ms. Draggers that took place on that date at the Education Department of MCF. (Doc. no. 1, p. 3.) Petitioner asserts that he told Ms. Draggers during the interview that he had completed "over 800 hours in the [Literacy Program]" at FMC, that his crime was a felony, that he was a deportable alien, and that deportable aliens were not required to participate in the Literacy Program. (Id.) Petitioner asserts that Ms. Draggers then stated that she would place Petitioner in solitary confinement if he did not "sign out" of the Literacy Program. (Id.) Petitioner asserts that, as a result of that "improper pressure that [overcame]

2

his will and [coerced] him to comply," he subsequently signed the refusal form and added the "under duress" language. (Id.)

As a result of his withdrawal from the educational classes, the BOP classified Petitioner as "GED Progress Unsatisfactory" as of October 7, 2009. (See doc. no. 10, p. 8; doc. no. 10-4.) Notably, at the time that Respondent filed his response to the instant petition, Petitioner's file reflected a pending detainer from the Bureau of Immigration and Customs Enforcement ("BICE"), but no final deportation, removal, or exclusion orders. (See doc. nos. 10-1, 10-8.)

In his petition, Petitioner presents two distinct arguments: (1) as described above, Ms. Draggers "subjected [him] to an improper pressure" when she threatened to place him in solitary confinement if he did not "sign out" of the Literacy Program, and that he thus signed the refusal form "under duress" (doc. no. 1, p. 3); and (2) notwithstanding the circumstances of his withdrawal from the program, as a deportable alien, he was not required to participate in the program but did so in order to qualify for the "full [54] days of [Good Conduct Time ("GCT")] (id. at 6-7). As to his second argument, Petitioner further asserts that, because he "successfully completed the one mandatory period of 240 instructional hour[s]," he is entitled to receive 54 days of GCT per year, rather than 48 days per year. (Id. at 1-2, 7-8.) Accordingly, Petitioner requests that he be "reinstated" with the full 54 days of GCT for the years 2008, 2009, 2010, 2011, 2012, 2013, and 2014,[1] and that he continue to

---

[1]Although Petitioner in fact listed "2010" twice and omitted "2011" (doc. no. 1, p. 1), the Court presumes that it was his intention to include 2011.

3

receive 54 days per year for the duration his sentence.[2] (Id. at 1, 8.)

In his response, Respondent first argues that Petitioner's claim that he was forced to sign withdrawal papers under duress is unexhausted. (Doc. no. 10, pp. 3-5, 14.) Notably, Respondent has provided a series of grievance forms and appeals that Petitioner submitted at MCF indicating that he successfully exhausted his administrative remedies as to his claim concerning his entitlement to 54 days of GCT per year rather than 42 days. (See doc. no 10-2, pp. 25-32.) Nowhere in the provided grievances, however, is there any mention of Petitioner being forced to sign withdrawal papers under duress. According to the affidavit of Jorge L. Matos, a "Supervisory Attorney Advisor" who "assists the United States Attorney's Office for Southern District of Georgia in civil matters involving the BOP and federal inmates" – and who is familiar with the processing of inmate administrative remedies – Petitioner only mentioned his claim of duress on a single occasion in a formal grievance dated September 3, 2010. (Id. at 1, 5.) Respondent evinces some disagreement with Mr. Matos's statement, in that Respondent argues that Petitioner in fact *never* mentioned in a grievance his allegation that he signed the withdrawal form under duress.[3] While the Court need not describe Petitioner's subsequent grievances in detail, Mr. Matos explains that Petitioner continued to grieve his claim concerning his alleged entitlement to 54 days of GCT

---

[2] Petitioner has submitted a computer print-out entitled "Sentence Monitoring Good Time Data as of 03-11-2010" indicating that he received 54 days of GCT per year for the years 2003 through 2007, the years in which he participated in the Literacy Program at FMC, but that he began receiving 42 days of GCT per year beginning in 2008, the year in which he was transferred to MCF and stopped participating in the program. (Doc. no. 3, p. 11.)

[3] Although Respondent has provided an "Inmate/Resident Grievance" completed by Petitioner and dated September 3, 2010, that grievance does not contain any mention of Petitioner's claim of duress. (Doc. no. 10-2, p. 27.)

4

per year through the final stage of the administrative procedures, but that he never again raised the issue of duress. (Id. at 5-6.)

Respondent further argues that Petitioner has no constitutional right to GCT, but that the terms for GCT are instead set by Congress. (Doc. no. 10, pp. 10-12.) Respondent also contends that Petitioner has not been disciplined, but instead that, due to his refusal to participate in the Literacy Program, he is not entitled to the full allotment of GCT per year. (Id. at 12.) Finally, Respondent argues that Petitioner is not exempt from the literacy attainment provisions of the Prison Litigation Reform Act ("PLRA") because (1) there are no documents in Petitioner's file indicating that he is "under a final BICE order of deportation, exclusion or removal;" and (2) even if he *did* have a final order of removal, the applicable federal regulation simply provides that inmates who are "sentenced deportable aliens" are exempt from attending the Literacy Program. (Id. at 13.)

## II. DISCUSSION

### A. Duress Claim is Unexhausted

As an initial matter, the Court finds that, as correctly pointed out by Respondent, Petitioner's claim that he signed the form certifying his withdrawal from the Literacy Program at MCF under duress is unexhausted. Prisoners seeking habeas relief, including relief pursuant to § 2241, are subject to administrative exhaustion requirements. Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004) (*per curiam*), *cert. denied*, 541 U.S. 1036 (2004); Rodriguez v. Lamer, 60 F.3d 745, 747 (11th Cir. 1995) (noting requirement for exhausting administrative remedies with the BOP prior to seeking § 2241 relief in federal court); see also Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994) (*per curiam*) (noting exhaustion requirement in

5

relation to bringing § 2241 petition); United States v. Gabor, 905 F.2d 76, 78 n.2 (5th Cir. 1990) (noting applicability of exhaustion requirement to claims for computation of sentence credit awards). In this Circuit, even if an inmate claims that his release date has passed and he remains incarcerated, courts should enforce the exhaustion requirement:

> In February 1991 Gonzalez filed in the district court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. He asserted that because his presumptive release date had passed, he need not exhaust his administrative remedies before seeking relief from the district court. Courts have original jurisdiction over imposition of a sentence. The Bureau of Prisons is, however, responsible for computing that sentence and applying appropriate good time credit. U.S. v. Martinez, 837 F.2d 861, 865-66 (9th Cir. 1988). The Bureau of Prisons has established regulations that set forth the procedures that a prisoner must follow before seeking relief from a district court. U.S. v. Lucas, 898 F.2d 1554, 1556 (11th Cir. 1990).

Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992) (*per curiam*).

The Eleventh Circuit has held, unequivocally, that "[i]f, and only if, the [petitioner] has pursued his administrative remedy may he seek relief in the district court," United States v. Herrera, 931 F.2d 761, 764 (11th Cir. 1991), and thus "whether [Petitioner] may even assert a futility exception to the requirement is questionable." Jaimes v. United States, 168 Fed. Appx. 356, 359 & n.4 (11th 2006) (*per curiam*).[4] Although some courts within the Eleventh Circuit have noted that under certain circumstances a § 2241 petitioner may seek judicial waiver of the Eleventh Circuit's exhaustion requirement by demonstrating futility, they have

---

[4] The Court recognizes that although the Eleventh Circuit has in the past suggested that exhaustion in § 2241 petitions is a jurisdictional issue, Jaimes, 168 Fed. Appx. at 358, the issue is somewhat unsettled in light of the Supreme Court's ruling in Bowles v. Russell, 551 U.S. 205, 213-14 (2007). Notably, however, the Eleventh Circuit has since rejected futility of exhaustion, Rey v. Warden, FCC Coleman-Low, 359 F. App'x 88, 90-91 (11th Cir. 2009) (*per curiam*), and reconfirmed its view that "exhaustion of administrative remedies is jurisdictional." Krist v. Eichenlaub, 386 F. App'x 920, 923 (11th Cir. 2010) (*per curiam*) (quoting Gonzalez, 959 F.2d at 212).

6

also concluded that "the question [of] whether the Eleventh Circuit considers the exhaustion requirement in § 2241 subject to judicial waiver is, at best, unsettled."[5] Jones v. Zenk, 495 F. Supp. 2d 1289, 1297, 1299-1300 (N.D. Ga. July 6, 2007). However, based on Eleventh Circuit precedent, Petitioner is still subject to the requirement of administrative exhaustion. Rey, 359 F. App'x at 90 (citing Skinner, 355 F.3d at 1295); Martin v. Zenk, 244 Fed. App'x 974, 977 (11th Cir. 2007) (*per curiam*) (same).

In any event, those courts which apply a futility exception do so in only "extraordinary circumstances," and require the petitioner to "bear[] the burden of demonstrating the futility of administrative review." Fuller, 11 F.3d at 62; see also Jones, 495 F. Supp. 2d at 1300.

Here, Petitioner has shown neither the existence of exceptional circumstances nor the futility of administrative review. In fact, outside of his provision of a series of his grievances and the responses to those grievances (see generally doc. no. 3), the majority of which overlap with those provided by Respondent, Petitioner has not addressed the issue of exhaustion at all in either his petition or his submitted exhibits.[6] Moreover, none of the grievances supplied by either Petitioner or Respondent provide any indication whatsoever that Petitioner ever raised the issue of duress in those grievances or at any point during the administrative process. (See generally id.; see also doc. no. 10-2, pp. 25-43.) As to the apparent conflict between

---

[5] "On the one hand, the Eleventh Circuit has recognized the statutory/judicial distinction given effect in [McCarthy v. Madigan, 503 U.S. 140 (1992)], indicating that exceptions to judicially-imposed exhaustion requirements remain viable. In several other cases, however, the Eleventh Circuit has indicated some doubt about whether the exhaustion requirement in § 2241 cases may be waived." Jones, 495 F. Supp. 2d at 1297-98 (internal citations and quotations omitted).

[6] Notably, Petitioner does recite the PLRA's statutory provision governing exhaustion in his petition (see doc. no. 1, p. 4), but nowhere does he make any effort to apply that provision to the circumstances of his own case.

7

Respondent's argument that Petitioner never raised the issue and Mr. Matos's statement that Petitioner raised the issue in a single grievance dated September 3, 2010, the truth of the matter is irrelevant: even if Petitioner *did* raise the duress issue in a September 3, 2010 grievance – which does not appear to be the case based on the September 3, 2010 grievance that has been provided (see doc. no. 10-2, pp. 27-28) – he thereafter abandoned it entirely and proceeded to grieve only his claim concerning entitlement to 54 days per year. Thus, Petitioner's claim that he signed the October 7, 2009 withdrawal form under duress is unexhausted and subject to dismissal.

### B. No Entitlement to GCT

The sole remaining issue in this case is whether Petitioner is entitled to additional GCT under the applicable regulations. For the reasons set forth below, the Court concludes that he is not.[7]

Before addressing Petitioner's specific contentions, the Court will first examine the GCT statute and the BOP's relevant regulations and policies.

### 1. Applicable Statutes and Regulations

When Congress enacted the PLRA, it amended the provision governing GCT to provide that prisoners

---

[7]Notably, as Respondent correctly points out (doc. no. 10, p. 14), this Court has on numerous prior occasions addressed the issue of whether an inmate's status as a deportable alien subject to detainer or final order of removal exempts him from the requirement that he participate in the BOP's Literacy Program in order to qualify for the full possible amount of GCT. In those cases, the Court has determined that such a status does not so exempt that inmate. See Reyes-Morales v. Wells, 766 F. Supp. 2d 1349, 1351 (S.D. Ga. Jan. 19, 2011); Perez v. Pugh, CV 305-097, doc. nos. 7, 9 (S.D. Ga. Apr. 13, 2006); Oleaga v. Pugh, CV 305-080, doc. nos. 7, 9 (S.D. Ga. Jan. 18, 2006); Caraballo-Rodriguez v. Pugh, CV 304–081, doc. nos. 12, 15 (S.D. Ga. June 13, 2005).

> may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the [BOP] that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. . . . [I]f the [BOP] determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the [BOP] determines to be appropriate.

18 U.S.C. § 3624(b)(1). In determining whether and how much GCT should be awarded to a prisoner, Congress also directed, "In awarding credit under this section, the [BOP] *shall* consider whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning a high school diploma or an equivalent degree." Id. In keeping with this dictate, Congress has mandated that the BOP must provide a "General Educational Development ["GED"] program for inmates who have not earned a high school diploma or its equivalent." Id. § 3624(b)(3). However, Congress has also provided, "Exemptions to the [GED] *requirement* may be made as deemed appropriate by the Director of the [BOP]." Id. § 3624(b)(4) (emphasis added).

The BOP has promulgated regulations that govern GCT in accordance with the congressional mandates set forth in § 3624(b). Under these regulations, an inmate who has earned or is making satisfactory progress toward a GED credential or high school diploma is eligible for up to 54 days of GCT for each year served. 28 C.F.R. § 523.20(c)(1). An inmate who does not meet these criteria, on the other hand, is only eligible for a maximum of 42 days of GCT for each year served. Id. § 523.20(c)(2). These regulations further provide that "an alien who is subject to a final order of removal, deportation, or exclusion is eligible for, but is not required to, participate in a literacy program, or to be making

9

satisfactory progress toward earning a [GED] credential, to be eligible for a yearly award of good conduct time." Id. § 523.20(d).

The BOP has also promulgated regulations governing an "adult literacy program." 28 C.F.R. § 544.70 *et seq.* With certain exceptions, inmates who do not have a GED or a high school diploma are required to participate in such a program for a minimum of 240 hours or until they obtain a GED, whichever occurs first. Id. § 544.70. One of the enumerated exceptions to this requirement is that "sentenced deportable aliens," among others, "are not required to attend the literacy program." Id. § 544.71(a)(3). Sentenced deportable aliens who do not attend a literacy program cannot be subjected to disciplinary action for opting out of the program. See id. §§ 544.71(a) & 544.75.

In addition, the BOP has fleshed out this regulatory framework with Program Statements ("PS") that apply to GCT awards and Literacy Program participation.[8] PS 5884.03 details the procedures for awarding GCT under 18 U.S.C. § 3624 and 28 C.F.R. § 523.20, and provides, "An inmate alien subject to a final order of removal, deportation, or exclusion will earn GCT at the annual rate of 54 days," though such award "is subject to disciplinary forfeiture or disallowance." PS 5884.03 §§ 7(e) & (f). In its summary of the changes effected by revising the previous Program Statement dealing with GCT, the BOP makes clear that the primary change put into effect in the new version of this Program Statement is "to exempt aliens subject to a final order of removal, deportation, or exclusion from the 'satisfactory progress in a literacy program' provision of the PLRA." Id. § 2.

---

[8]Program Statements, the BOP's internal agency guidelines, are entitled to some deference from the courts. Reno v. Koray, 515 U.S. 50, 61 (1995).

10

Also relevant to the issues at hand is PS 5350.28, which covers the Literacy Program[9] and elaborates on the provisions of 28 C.F.R. § 544.70 *et seq*. This Program Statement reiterates the Literacy Program participation requirement and the exemption for "sentenced deportable aliens." PS 5350.28 §§ 1 & 8 (quoting 28 C.F.R. §§ 544.70 & 544.71). In addition, it defines the term "sentenced deportable alien" to include inmates who are either (1) "assigned a Public Safety Factor 'H' status of 'Alien'" or (2) "under a final Bureau of Immigration and Customs Enforcement order of deportation, exclusion, or removal." Id. § 9(c). Furthermore, it addresses the question of how "the sentenced deportable alien exemption affect[s] the good conduct time of these inmates[.]" Id. § 9(d). Specifically, it states:

> Although sentenced deportable aliens are exempt from attending the literacy program for the mandated 240 instructional hours, they are still subject to the satisfactory progress literacy provision of . . . the PLRA. To . . . be eligible for the maximum amount of GCT, deportable aliens without a verified high school diploma or GED who are sentenced under . . . the PLRA must meet the satisfactory progress provision of [§ 3624(b)(1) of the PLRA].

Id.[10]

---

[9]Confusion arises from the slight differences between the terminology used in the statute, the regulations, and the Program Statements in reference to what amounts to the same educational program. The "GED program" mentioned in 18 U.S.C. § 3624(b), the "adult literacy program" from 28 C.F.R. § 544.70, and the "Literacy Program" referenced throughout PS 5350.28 all refer to essentially the same thing. For ease of reference, the Court will hereinafter use the term "Literacy Program," as it did in describing the factual background above.

[10]To be clear, being subject to a final order of removal, deportation, or exclusion is not the same thing as being a sentenced deportable alien under the BOP's regulatory framework. The former is a sufficient, but not a necessary, condition for the latter. In other words, according to the BOP's definition, an inmate who has been subjected to a final deportation order qualifies as a sentenced deportable alien, but it is possible to be a sentenced deportable alien without being subjected to final deportation order (*e.g.*, by being an alien

11

In sum, Congress has granted the BOP considerable discretion in deciding whether and how to award GCT to prisoners. See 18 U.S.C. § 3624(b). The BOP has exercised that discretion by promulgating regulations and program statements that control how GCT is awarded. Under these rules, inmates are generally required to have earned or be making satisfactory progress toward a high school diploma or GED to be eligible for the maximum 54 days of GCT per year served. See 28 C.F.R. § 523.20; PS 5884.03. The way for inmates to satisfy this "satisfactory progress" requirement is to participate in the Literacy Program. The BOP has exempted sentenced deportable aliens from the Literacy Program. See 28 C.F.R. § 544.70 *et seq.*; PS 5350.28. This exemption does not, however, guarantee them eligibility for the full 54 days per year of GCT – it merely ensures that they will not be disciplined for failure to participate in the program. 28 C.F.R. §§ 544.71(a) & 544.75. The BOP has created a separate exemption for "aliens subject to a final order of removal, deportation, or exclusion." PS 5884.03 §§ 2 & 7(e)-(f). Inmates in this category have been exempted from the Literacy Program as well as the satisfactory progress requirement, such that they accrue 54 days of GCT per year irrespective of whether they participate in the Literacy Program. See id.

### 2. Petitioner Is Not Entitled to Additional GCT

Petitioner's argument concerning his supposed entitlement to 54 days of GCT for each year served exhibits a fundamental misunderstanding of the requirements governing the BOP's program and fails for a number of reasons. First, presuming that Petitioner's assertion

---

who has been classified with a Public Safety Factor of "Alien" but has not been subjected to a final deportation order). See PS 5350.28 § 9(c).

that he is a "sentenced deportable alien" (see doc. no. 1, pp. 7) is correct by virtue of his assignation of a Public Safety Factor 'H' status of 'Alien,' PS 5350.28 § 9(c), such a classification merely establishes that he is not *required* to attend the Literacy Program, as correctly pointed out by Respondent (doc. no. 10, p. 13).[11] In other words, sentenced deportable aliens are exempt from the requirement that they participate in the Literacy Program for 240 hours or until they obtain a GED, PS 5350.28 §§ 1 & 8, but they are still subject to the provision mandating that they show satisfactory progress to qualify for the full 54 days per year of GCT, id. § 9(d).[12] As noted above, satisfactory progress is shown by participation in the Literacy Program. Thus, Petitioner's argument that he has somehow shown satisfactory progress by virtue of having completed in the past the "one mandatory period of 240 instructional hours" misinterprets the relevant statutory provisions. (Doc. no.

---

[11] Respondent appears to imply that, because Petitioner is not under a final BICE order of deportation, exclusion, or removal, he is not properly classified as a sentenced deportable alien. (See doc. no. 10.) However, as noted above, even in the absence of such an order, the assignation of a Public Safety Factor 'H' status of 'Alien' is a sufficient alternative route to becoming so classified. PS 5350.28 § 9(c).

Notably, although Petitioner fails to point to any particular document corroborating his assertion that he has been so classified – in fact, next to that assertion in his petition he wrote "See [Ex.]" and then failed to specify an exhibit (doc. no. 1, p. 7) – a detainer has been filed against him charging "Deportation" (doc. no. 3, p. 7). Because that detainer tends to confirm that Petitioner *is*, in fact, an alien, and because whether or not Petitioner has been assigned a Public Safety Factor 'H' status of 'Alien' is ultimately inconsequential to the Court's holding here, the Court presumes for the purposes of analysis that Petitioner has been assigned that status.

[12] As argued by Respondent – and as repeatedly explained by prison officials responding to Petitioner's grievances (see doc. no. 10, p. 8; doc. no. 3, pp. 3, 12-13, 15) – Petitioner had not received a final order of deportation, removal, or exclusion at the time he withdrew from the Literacy Program, and he was thus not automatically entitled to 54 days of GCT per year without first making the requisite showing of satisfactory progress, PS 5884.03 §§ 2 & 7(e)-(f).

13

1, pp. 6-8.) In fact, all that Petitioner effectively accomplished by completing 240 hours of the Literacy Program was the satisfaction of a requirement for inmates without a high school diploma or GED that Petitioner argues does not even apply to him. While his participation in the Literacy Program was sufficient at the time to show satisfactory progress towards earning a GED, which thus qualified him for the full 54 days of GCT per year, his withdrawal from participation in that program before obtaining a GED likewise resulted in his classification as "GED Progress Unsatisfactory." (Doc. no. 10-4, p. 1.)

Accordingly, as explained by various prison officials and other authorities in the grievance responses that Petitioner himself has provided, Petitioner's withdrawal from the program and classification as "GED Progress Unsatisfactory" resulted in his inability to acquire the full possible amount of good time credit. (See doc. no. 3, pp. 4, 12-13, 15.) Moreover, those grievance responses make abundantly clear that Petitioner was extensively counseled as to the effect that his withdrawal from the program would have; namely, that the GCT that he was awarded each year would be reduced from 54 days to 42 days. (Id. at 3-4, 9, 12-13, 15.) In fact, in each response that Petitioner has submitted, the responding authority has gone to great lengths to explain to Petitioner why he is not currently receiving the full possible amount of GCT and has detailed exactly what he must do in order to receive that amount. For example, Petitioner was told on November 8, 2010, "[Y]ou are not eligible to earn GCT at the rate of 54 days a year unless you reenroll and make satisfactory progress in the GED program or complete the program and earn your GED." (Id. at 13.)

In sum, Respondent has shown that Petitioner has failed to exhaust his claim concerning duress and, furthermore, that he has been awarded all of the GCT to which he is

14

entitled. As a result, the instant petition should be denied.

## III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Wells.

SO REPORTED and RECOMMENDED this 21st day of March, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

15